562 P.2d 1372
**GLOBE INDEMNITY COMPANY, a corporation, Appellant,**

v.

**Anthony BLOMFIELD and Harriette Blomfield, husband and wife, Appellees.**

No. 2 CA–CIV 2274.

Court of Appeals of Arizona, Division 2.

Jan. 19, 1977.

Rehearing Denied Feb. 28, 1977.

Review Denied April 5, 1977.

**6**

Lesher, Kimble, Rucker & Lindamood, P. C., by Michael J. Gothreau, Tucson, for appellant.

Miller, Pitt & Feldman, P. C., by Janice A. Wezelman and Stanley G. Feldman, Tucson, for appellees.

## OPINION

HATHAWAY, Judge.

This is an appeal by an insurer, Globe Indemnity Company, from a summary judgment in favor of plaintiffs-appellees in a declaratory judgment action. The trial court found that the plaintiffs were entitled to recover from appellant for amounts due on a judgment entered in a prior action against John Hay, an insured under a policy issued by Globe.

The underlying facts are as follows. The original suit brought by the Blomfields against Hay resulted from an incident in which Hay struck Blomfield in the face with a drinking glass. Blomfield was badly scarred and ultimately lost his sight in one eye. This incident occurred on January 1, 1973, in Mexico. While in Mexico, Blomfield agreed to release Hay from all liability in exchange for $10,000. This was necessary in order for the insured and Blomfield to be able to leave Mexico. In June 1973, Blomfield filed suit in the Maricopa County Superior Court. Appellant was notified of the incident at the time suit was filed and commenced defense of Hay under a reservation of rights. While suit was pending, the parties entered into negotiations and on January 15, 1975, Hay rescinded the release in return for a refund of the $10,000. Prior to this agreement, plaintiffs' attorneys wrote to the insurer's attorney requesting information as to whether this rescission would be considered a breach of the policy's cooperation clause releasing the insurer from all obligation to defend or indemnify the insured. Appellant-insurer admits in its brief that prior to the rescission, it never informed appellees that it considered this a breach of the cooperation clause. In addition, personal counsel for the insured offered not to rescind the release if the insurer would reimburse the $10,000 and rescind its reservation of rights, but appellant rejected the offer by letter dated January 14, 1975, without any comment on the effect of the proposed rescission of the release. After the release had been rescinded, appellant on January 16, 1975, ordered its attorney to withdraw from the suit but he refused because the trial was only 11 days away. Subsequently, Blomfield signed a covenant not to execute against Hay in exchange for Hay's payment of $10,000. The covenant not to execute is dated January 26, 1975. The case went to trial and judgment was obtained against Hay in the amount of

$175,000 compensatory damages. Globe refused to satisfy the judgment and this lawsuit ensued.

Appellant-Globe raises four points in its appeal from the summary judgment. First, it contends that there is a disputed factual issue as to the insured's breach of the policy's notice provisions. It is not necessary to consider whether the insured's delay in giving notice was a breach excusing the insurer from performance. Even if the delay constituted a breach, appellant has not made a sufficient showing of prejudice as a result of the delay. An insurer cannot withdraw coverage on the ground that a condition such as notice has not been met unless the insurer can show that it was prejudiced by the act of the insured. *American Home Assurance Company v. Sand,* 253 F.Supp. 942 (D.Ariz.1965); *Lindus v. Northern Insurance Company of New York,* 103 Ariz. 160, 438 P.2d 311 (1968); *Massachusetts Bonding and Insurance Company v. Arizona Concrete Company,* 47 Ariz. 420, 56 P.2d 188 (1936); *Arizona Title Insurance and Trust Company v. Pace,* 8 Ariz.App. 269, 445 P.2d 471 (1968). Appellant-insurer did not adequately demonstrate the existence of disputed facts as to prejudice. It argues that the mere fact that notice of the incident was not given to it until suit was brought six months later is enough to raise a factual issue as to prejudice. The mere fact of delay is not a sufficient showing of prejudice. *Massachusetts Bonding and Insurance Company v. Arizona Concrete Company,* supra. The notice was given in June 1973, when the complaint was filed and the trial was not held until January 1975. The insurer thus had ample time to investigate the incident and prepare for trial. Globe made no showing to the contrary.

Appellant's only other support for its allegation of prejudice consists of a few vague assertions by its claims manager that if the company "had known of it sooner, we may had [sic] been able to handle directly with it." He also stated that it was "possible" the suit might have been settled before lawyers became involved. An appeal from the granting of a motion for summary judgment "must be able to point to an issue of fact in the record which renders the summary judgment improper." *Joseph, M. D. v. Markovitz, M. D.,* 27 Ariz.App. 122, 551 P.2d 571, 574 (1976); *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966). These vague statements do not present any evidence of prejudice. We hold that appellant has not met its burden of proving the existence of a factual issue as to prejudice.

The appellant-insurer's second ground for appeal is that it should be permitted, in the declaratory judgment action, to assert the policy's exclusion for intentional acts which negates coverage. We disagree and hold that appellant is collaterally estopped from asserting the intentional act exclusion. Appellant admits that in a subsequent action the insurer is bound as to all material findings of fact essential to the judgment of tort liability in the prior case. *Hartford Accident & Indemnity Co. v. Villasenor,* 21 Ariz.App. 206, 517 P.2d 1099 (1974); *Herendeen v. United States Fidelity and Guaranty Co.,* 19 Ariz.App. 399, 507 P.2d 1011 (1973). Appellant argues, however, that the prior finding of negligence did not preclude a later determination that the insured's actions were intentional. This is incorrect. A finding of negligence necessarily includes a finding that the act was not intentional. It is well accepted that there is a "distinction between negligence and intent. In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will." Prosser, § 31, p. 145. This view is also found in 65 C.J.S. Negligence § 3, pp. 473–74. *Miller v. U. S. Fidelity & Casualty Co.,* 291 Mass. 445, 197 N.E. 75 (1935), supports the proposition that an adjudication of negligence precludes the insurer from later asserting that the insured's act was intentional.

Appellant complains that there was no opportunity to submit directly the question of intent in the personal injury trial after appellees were permitted to strike those portions of the complaint alleging inten-

tional tort. The argument ignores the availability of a determination before trial by declaratory judgment in a separate action, thereby avoiding the possible conflict of interest between insured and insurer under the policy, as well as the professional conflict for the attorney retained by the insurer to represent the insured in the personal injury case. See *Cowan v. Insurance Company of North America,* 22 Ill.App.3d 883, 318 N.E.2d 315 (1974).

■ Appellant's third argument on appeal is that it is entitled to assert as a defense the insured's breach of the policy's cooperation provisions. We hold that even if there was a lack of cooperation, appellant is estopped from asserting it as a defense. Appellant was informed of the negotiations between its insured and appellees prior to rescission of the release. Appellant was asked whether it would consider such a rescission to be a breach of the cooperation clause and appellant failed to respond. Appellant argues that it communicated with the insured prior to rescission of the release and that a factual issue as to estoppel is thereby raised. Appellant fails, however, to explain how these communications gave notice that the company considered a rescission a breach of the cooperation clause. The letter of January 14, 1975, included in the record on appeal, does not refer to breach of the cooperation clause. It is well settled that a reservation of the insured's rights, to be effective, must fairly inform the insured of the insurer's problems. 44 Am.Jur.2d Insurer, § 1156. For the same reason, the insurer should not be allowed to invoke the cooperation clause after remaining silent despite its knowledge that the insured proposed to do what it afterward says he should not have done. Appellant is therefore estopped from asserting lack of cooperation as a defense. The appellees can raise the claim of estoppel even though they are not the assignees of the insured. See *Sandoval v. Chenoweth,* 2 Ariz.App. 553, 410 P.2d 671 (1966), vacated on other grounds, 102 Ariz. 241, 428 P.2d 98 (1967). The trial court was correct in granting the motion for summary judgment as to this issue.

■ As its last point on appeal, appellant contends that because there is a covenant not to execute between plaintiffs-appellees and the insured, the insurer has no obligation to pay appellees. Appellant argues that it has contracted with the insured only to pay sums which the insured shall become "legally obligated to pay" and that, because of the covenant, the insured has no legal obligation to pay anything. A covenant not to execute is merely a contract and not a release. *Fagerberg v. Phoenix Flour Mills Co.,* 50 Ariz. 227, 71 P.2d 1022 (1937). It seems reasonable to conclude, therefore, that the insured's tort liability remains but that he has an action for breach of contract if the plaintiff attempts to collect the judgment in violation of the covenant. *Whittlesea v. Farmer,* 86 Nev. 347, 469 P.2d 57 (1970); *Pellett v. Sonotone Corp.,* 26 Cal.2d 705, 160 P.2d 783 (1945); 76 C.J.S. Release § 3, p. 630; 66 Am.Jur.2d Release, § 2, pp. 679–680. The Arizona Supreme Court has recently stated in *Hovatter v. Shell Oil Company,* 111 Ariz. 325, 529 P.2d 224 (1974):

"We agree with the opinion expressed in *Holcomb v. Flaving,* 62 Ill.App.2d 245, 210 N.E.2d 565 (1965):

'In our opinion it matters greatly how the servant's liability was extinguished. Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable, but there is no logical or legal basis for extending the rule to situations where a servant terminates his liability by obtaining a covenant not to sue.' " 62 Ill. App.2d at 249, 210 N.E.2d at 567.

In *Hovatter,* a petroleum company and its distributor were defendants in a personal injury action. This differs from the usual insurance situation in which the insurer is not a co-defendant. The two defendants in *Hovatter,* however, were not joint tortfeasors. The court noted that "Both parties agree that had the case against Simkins [the distributor] been dismissed with prejudice, such dismissal would have operated as a dismissal on the merits." 111 Ariz. at 326, 529 P.2d at 225. It is thus not possible to

explain the result in *Hovatter* on the basis of the common law rule that release of one joint tortfeasor releases all. Also, the opinion makes it quite clear that "a covenant not to sue is not a legal release of liability for the tort." 111 Ariz. at 326, 529 P.2d at 225.

Even assuming that *Hovatter* is inapplicable to the instant case, there is an alternative theory under which Globe may be held liable to the plaintiffs despite the covenant not to execute. The covenant not to execute was entered into after the insurance carrier denied coverage and attempted to require its attorney to cease defending the insured. The attorney refused to drop the case eleven days before trial. Nevertheless, the insured was justified in taking steps to protect himself. Even if there were a rule that a covenant not to execute by one party released another party whose liability was solely derivative, an exception to this rule should be recognized where the insured made the covenant in order to protect himself after being abandoned by the insurer. This is especially true where the covenant, as here, expressly reserves to the plaintiff a right to proceed against the insured's insurance carrier. Such a reservation was made in *First National Indemnity Co. v. Mercado,* 511 S.W.2d 354 (Tex.Civ. App.1974), and the Texas court found an insurer liable to pay a judgment against its insured despite the existence of a covenant not to execute against the insured. The court permitted this result because the insurance company refused to defend the insured. In *Mercado,* the insured was provided with no defense by the company whereas in the instant case Globe's lawyer defended the insured. He did so, however, against the wishes of the company and the insured was aware that the company intended to deny coverage. The insured in this case thus has a similar need to protect himself since he has every reason to expect that the insurer will refuse to pay any judgment. This right of the insured to protect himself has been approved by a leading authority on insurance law. 7A, J. Appleman, Insurance Law & Practice, § 4514 at p. 143, n. 54.30 (Supp.1976). Arizona has also accept-

ed the principle that the insured is entitled to protect himself when his insurer refuses to defend. *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969). *Damron,* however, is not quite dispositive of the issues in the instant case since in *Damron* the insured had assigned his right of action against the insurer to the plaintiff. In *Damron,* the insurance carrier was seeking to defeat its liability on the ground that this assignment rendered the plaintiff's suit collusive.

We hold that for the reasons discussed above, appellees were entitled to summary judgment against the appellant-insurer. We therefore affirm the judgment of the trial court.

Affirmed.

HOWARD, C. J., and RICHMOND, J., concur.