912 P.2d 559

Sands Dickson McLELLAN,
Plaintiff–Appellant,

v.

ATCHISON INSURANCE AGENCY,
INCORPORATED, Defendant–
Appellee,

and

Fireman's Fund Insurance Co.; John
Does 1–10; Jane Does 1–10; Doe
Corporations 1–10, Defendants.

ATCHISON INSURANCE AGENCY,
INCORPORATED, Third–Party
Plaintiff–Appellee,

and

Fireman's Fund Insurance Co.,
Third–Party Plaintiff,

v.

KAUAI FAMILY MEDICINE, INC. and
Harold C. Spear, III, M.D., also known
as Tex Spear, M.D., Third–Party Defen-
dants.

No. 16090.

Intermediate Court of Appeals of Hawai'i.

Feb. 22, 1996.

Brian K. Yomono and Gail Y. Cosgrove (Hisaka, Stone & Goto, of counsel), on the brief, Honolulu, for defendant-appellee and third-party plaintiff-appellee Atchison Insurance Agency, Inc.

Before BURNS, C.J., KIRIMITSU, J., and COLLEEN K. HIRAI, Circuit Judge, in place of ACOBA, J., Recused.

KIRIMITSU, Judge.

Plaintiff-appellant Sands McLellan (McLellan) appeals the First Circuit Court's November 22, 1991 order granting defendant-appellee/third-party plaintiff-appellee Atchison Insurance Agency's (Atchison)[1] motion for partial summary judgment (November 22, 1991 order) that dismissed McLellan's claim for negligent procurement of insurance coverage. On appeal, McLellan contends, *inter alia*, that her claim for damages consists of a $350,000 stipulated judgment. For the reasons stated below, we reverse the November 22, 1991 order.

## I. BACKGROUND

In 1982, Dr. Harold C. Spear, III (Dr. Spear) and his medical company, Kauai Family Medicine, Inc. (Family Medicine), obtained a commercial multi-peril insurance policy from Fireman's Fund Insurance Company (Fireman's Fund). The policy was sold by Atchison on behalf of Fireman's Fund. The policy provided coverage against, *inter alia*, automobile accidents. However, the policy specifically excluded coverage for non-owned automobiles such as rented vehicles that were not owned by Dr. Spear or Family Medicine.

On April 1, 1986, Dr. Spear was involved in a single car accident while driving a rental car in North Conway, New Hampshire. His passenger and then fiancee, McLellan, allegedly sustained various injuries to her back and pelvic areas from the accident. Dr. Spear filed a claim for coverage with his Fireman's Fund policy. However, in a letter dated October 20, 1986, Fireman's Fund de-

Paul A. L'Ecuyer, on the briefs, Kailua, for plaintiff-appellant.

1. Atchison Insurance Agency, Incorporated (Atchison) is an independent insurance agent that sells several lines of insurance through various insurance carriers such as Fireman's Fund Insurance Company (Fireman's Fund).

nied coverage because the accident involved a non-owned (rental) vehicle.

Thereafter, McLellan was injured again in two other traffic accidents on June 2, 1986 and March 3, 1987 while riding as a passenger in vehicles owned or operated by Dr. Spear and/or Family Medicine.[2] Subsequently, McLellan filed suit against Dr. Spear and Family Medicine for all three accidents in Civil No. 87–0115 (Fifth Circuit).

### A. Sequence Of Events In Civil No. 87–0115 (Fifth Circuit)

Although rejecting coverage for the April 1, 1986 accident, Fireman's Fund proceeded to provide Dr. Spear with a defense against McLellan's claims arising from all three accidents without any reservation of rights. The litigation then progressed for approximately two years until shortly before the scheduled trial date.

Prior to trial, Fireman's Fund settled claims resulting from the June 2, 1986 and March 3, 1987 accidents for the sum of $500,-000. However, Fireman's Fund elected to go to trial on McLellan's remaining claim arising from the April 1, 1986 accident involving the rental car.

2. The record on appeal indicates that Dr. Harold C. Spear, III's (Dr. Spear) friend, Wil Tabian, was the driver in the June 2, 1986 accident while Dr. Spear was the driver in the March 3, 1987 accident.

3. The assignment agreement provides in relevant part:

[Dr. Spear] and [Family Medicine] ("Assignors"), for good and valuable consideration ... does hereby assign ... to [McLellan] ("Assignee") ... any and all sum or sums of money now due or owing to Assignors and all claims, demands, and causes of action of whatsoever kind and nature, which Assignors [have] had, now [have], or may have against [Fireman's Fund] and [Atchison] ... arising out of or for any loss, injury or damages sustained by Assignors or cause or causes of action arising, growing out of, relating to, or connected with ... Civil No. 87[-]0115 ... or any of the factual allegations of said lawsuit, or arising out of any dealings or transactions, of whatsoever kind or nature, between Assignors and [Fireman's Fund] and [Atchison].

4. The covenant provides in relevant part:

Thereafter, the following events occurred: (1) McLellan married Dr. Spear; (2) Dr. Spear terminated the services of the attorney supplied by Fireman's Fund; (3) Dr. Spear and Family Medicine stipulated to a $350,000 judgment (Stipulated Judgment) against themselves and in favor of McLellan, and the Stipulated Judgment was entered on September 5, 1989; (4) Dr. Spear and Family Medicine assigned all their claims against Fireman's Fund and Atchison that arose from Civil No. 87–0115 to McLellan;[3] and (5) in exchange for the above assignment and Stipulated Judgment, McLellan pledged not to execute any judgment against Dr. Spear and Family Medicine arising from Civil No. 87–0115.[4]

### B. Present Lawsuit: Civil No. 89–3742 (First Circuit)

On December 4, 1989, McLellan initiated the present lawsuit in Civil No. 89–3742 (First Circuit) against Fireman's Fund and Atchison. McLellan's complaint alleged, *inter alia*, that "Atchison negligently failed to explain the scope, nature, extent and limitations of insurance coverage sold to [Family Medicine] and Dr. Spear thereby depriving [Family Medicine] and Dr. Spear of the opportunity of purchasing additional coverage

NOW, THEREFORE, [McLellan], in consideration of the execution by [Dr. Spear and Family Medicine] of the [Stipulated Judgment] and assignment above-referenced, hereby covenants with [Dr. Spear and Family Medicine] that [McLellan] will not execute the Stipulated Judgment, or any other judgment arising out of [Civil No. 87–0115] or in any other manner arising out of acts, transactions or occurrences which were or could have been the subject of [Civil No. 87–0115], upon the individual or corporate assets of [Dr. Spear and Family Medicine], will not look to [Dr. Spear and Family Medicine] for payment of such Stipulated Judgment or other judgments, but will seek to enforce said Stipulated Judgment or other Judgments and any of [McLellan]'s rights thereunder solely against any insurance proceeds which have or may become available to [Dr. Spear and Family Medicine] as a result of [Civil No. 87–0115] and/or the events, transactions or occurrences giving rise to [Civil No. 87–0115], and/or against [Fireman's Fund and Atchison] or others. [McLellan] agrees not to record the Stipulated Judgment, and to file a satisfaction of judgment immediately upon any final decision concerning the payment or non-availability of insurance proceeds.

which would have covered the April 1, 1986 accident."[5] McLellan's complaint further prayed for, *inter alia*, judgment "against Atchison in an amount equal to the [$350,000] Stipulated Judgment" in Civil No. 87–0115 plus "pre and post judgment interest."

On August 13, 1991, Atchison moved for partial summary judgment in its favor and against McLellan. In particular, Atchison argued that McLellan needed to demonstrate actual damages in order to prosecute her negligence claim. Because McLellan promised not to execute the $350,000 Stipulated Judgment and because Dr. Spear never paid any amount toward this judgment, Atchison claimed that "[Dr.] Spear has not been damaged, and indeed, will never be damaged in the future." (Emphasis omitted.)

On October 8, 1991, the trial court held a hearing on Atchison's motion for partial summary judgment. At the hearing, Atchison argued that McLellan had only one claim for relief, *i.e.*, the $350,000 worth of alleged damages suffered as a result of the Stipulated Judgment. McLellan disagreed and stated broadly that she was pursuing all the claims assigned to her. However, when the trial court insisted that McLellan specify her damages, McLellan stated only that her damages were the $350,000 Stipulated Judgment in Civil No. 87–0115 (Fifth Circuit). According to McLellan, the issue boiled down to "whether the [circuit c]ourt want[ed] to rule that a stipulated judgment ... is going to bind [Atchison] to the underlying judgment as if it was through a trial or through a stipulation." After hearing oral arguments on the motion for partial summary judgment,

the circuit court took the matter under advisement.

On November 22, 1991, the circuit court entered its order granting Atchison's motion for partial summary judgment and dismissed McLellan's complaint against Atchison. The order provided in relevant part:

1. [Atchison] was not involved directly or through privies in Civil No. 87–0115 which resulted in the settlement of all three (3) automobile accidents in favor of [McLellan]. Therefore, Civil No. 87–0115 does not bind [Atchison].

2. [McLellan] sued herein on assigned claims which [Dr. Spear] held against [Atchison] relative to its selection of automobile insurance for [Dr. Spear]. [McLellan] as assignee, is subject to the defense that [Dr. Spear] suffered no damages as a result of [Atchison's] alleged failure to properly insure [Dr. Spear]. Since it is clear that, [Spear] suffered no damages, [McLellan's] claims are hereby dismissed. [Dr. Spear] is the beneficiary of [McLellan's] covenant not to execute on the Stipulated Judgment between them; therefore, no damages can arise out of the assigned claims.

Thereafter, McLellan filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

■ On appeal, a summary judgment order is reviewed under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting, Inc.*, 80

---

**5.** Thereafter, Fireman's Fund responded by filing a cross-claim against Atchison, a counterclaim against McLellan, and a third-party complaint against Family Medicine and Dr. Spear. Atchison likewise filed a cross-claim against Fireman's Fund and a third-party complaint against Family Medicine and Dr. Spear. Family Medicine and Dr. Spear counterclaimed against both Fireman's Fund and Atchison.

On October 4, 1991, all the parties entered into a stipulation that dismissed all claims except for: (1) McLellan's original claim against Atchison; (2) Atchison's third-party complaint against Family Medicine and Dr. Spear; and (3) Family Medicine and Dr. Spear's counterclaim against Atchison. On November 22, 1991, McLellan's complaint was dismissed pursuant to a partial summary judgment. *See* discussion, *infra*, at

562–63. On June 16, 1992, in a withdrawal of Atchison's motion for partial summary judgment regarding Family Medicine and Dr. Spear's counterclaim, Atchison stated that "the dispute between Atchison and [Family Medicine and Dr. Spear] has been resolved." The resolution of these claims among Dr. Spear, Family Medicine, and Atchison was further evidenced by an April 21, 1992 stipulation that dismissed all claims as to Dr. Spear and Family Medicine—a stipulation that we interpret to dismiss both Atchison's third-party complaint and Family Medicine and Dr. Spear's counterclaim. Accordingly, when McLellan filed her notice of appeal with regard to the partial summary judgment dismissing her complaint, all the claims of all the parties were resolved.

Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Summary judgment is proper where, viewing all evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party clearly demonstrates that he or she is entitled to judgment as a matter of law. *Id.*

We note that "[t]he evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial." *GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.) (citations omitted), *affirmed,* 80 Hawai'i 118, 905 P.2d 624 (1995). When the party defending the action moves for summary judgment, it "may, at any time, move with or without supporting affidavits for a summary judgment in his [or her] favor as to all or any part" of the action. Hawai'i Rules of Civil Procedure Rule 56(b). Supporting affidavits are not required because the defending party does not have the burden of proof at trial and he or she can satisfy his or her burden on summary judgment " 'by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his [or her] opponent.' For '[i]f no evidence could be mustered to sustain the non-moving party's position, a trial would be useless. . . .' " *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 396–97, 772 P.2d 1187, 1190 (1989) (quoting 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2727, at 130 (1983)) (citations and footnote omitted).

## III. *DISCUSSION*

On appeal, McLellan contends that the trial court erroneously granted Atchison's motion for partial summary judgment. Specifically, McLellan challenges the trial court's rulings that: (1) McLellan suffered no dam-ages because McLellan promised not to execute her Stipulated Judgment against Dr. Spear; and (2) Atchison was not bound by any proceedings in Civil No. 87–0115 (Fifth Circuit).

### A. *The Effect of a Covenant Not to Execute on the Element of Damages in a Claim for Negligence*

McLellan sued Atchison for the negligent procurement of insurance coverage. Under Hawai'i law, the elements of a negligence claim include, *inter alia,* "[a]ctual loss or damage resulting to the interest of another." *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987) (citations omitted); *Ono v. Applegate,* 62 Haw. 131, 137, 612 P.2d 533, 539 (1980). "Actual [losses or] damages are those that are real and substantial as opposed to speculative." *Grunwald v. Bronkesh,* 131 N.J. 483, 621 A.2d 459, 465 (1993) (citation omitted). *See also* W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 30, at 164–65 (5th ed. 1984) (footnotes omitted).[6]

In the instant case, the trial court granted partial summary judgment on the basis that McLellan would not be able to establish damages because of the existence of the covenant not to execute the Stipulated Judgment. However, McLellan asserts that a covenant not to execute does not release Atchison of any liability, *i.e.,* does not eliminate the fact that Dr. Spear was damaged. Because actual loss or damage is a material issue with regard to a claim of negligence, we first address the question whether a covenant not to execute, by itself, eliminates the fact that the insured has been damaged.

### 1. *Steinmetz v. Hall–Conway–Jackson*

In support of the contention that a covenant not to execute does not erase the fact of damages, McLellan cites *Steinmetz v. Hall–*

---

6. Professors Prosser and Keeton explain:

> Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.

*Prosser and Keeton on the Law of Torts* § 30, at 164–65 (footnotes omitted).

*Conway–Jackson, Inc.,* 49 Wash.App. 223, 741 P.2d 1054, *reconsideration denied* (1987), *review denied,* 110 Wash.2d 1006 (1988)—a case which is factually similar to the facts in the instant case.

In *Steinmetz,* the insured filed a negligence claim against her insurance agent for failure to procure the specific amount of liability insurance requested. The insured entered into an agreement with the injured. Under the agreement, the insured assigned her rights to the negligence claim to the injured party in exchange for an agreement not to execute the judgment against the insured. The trial court granted summary judgment to the insurance agent on the grounds that the agreement not to execute relieved the insured of any obligation to pay the judgment. Therefore, according to the court, the insured could not prove any damages. *Id.* at 1055.

The Washington Court of Appeals reversed the summary judgment. *Id.* at 1056. The court reasoned that the assignee's rights were coextensive with those of the assignor at the time of the assignment. The court further stated that a covenant not to execute coupled with an assignment and settlement agreement was not a release permitting the negligent party to escape liability. *Id.* (citations omitted). The court noted that at the time of the assignment, the insured had a claim for negligence against her insurance agent and could properly assign her claim to the injured party. The court believed that the proper focus was not on the effect of the assignment on the liability of the insured, but on the existence of the right to sue. Accordingly, the Washington Court of Appeals held that the fact that the insured made no out-of-pocket payments and incurred no personal liability because of the covenant not to execute did not mean, as a matter of law, the insured suffered no damages. *Id.* at 1056–57.

### 2. *Jurisdiction Split with Regard to the Effect of the Stipulated Judgment*

There is a division among jurisdictions as to whether an insured is damaged by a judgment, stipulated or otherwise, when the insured is protected by a covenant not to execute.

### a. *Majority Jurisdictions*

In cases where a judgment is entered against the insured after an insurer wrongfully fails to settle a claim within policy limits or defend the insured at trial, "[a] slim majority of jurisdictions permit an injured plaintiff[, the insured's assignee,] to recover damages from the insurer despite the existence of a covenant not to execute." *Greer v. Northwestern Nat. Ins. Co.,* 109 Wash.2d 191, 743 P.2d 1244, 1251 (internal quotation marks and citation omitted), *reconsideration denied* (1987). *See, e.g., Steil v. Florida Physicians' Ins. Reciprocal,* 448 So.2d 589, 591 (Fla.Dist.Ct.App.1984) (and cases cited therein). These jurisdictions adhere to the so-called "judgment rule" where mere entry of a final judgment against the insured constitutes actual damage to him or her. *See Gray v. Grain Dealers Mut. Ins. Co.,* 871 F.2d 1128, 1131 (D.C.Cir.1989); Annotation, *Insured's Payment Of Excess Judgment, Or A Portion Thereof, As Prerequisite Of Recovery Against Liability Insurer For Wrongful Failure To Settle Claim Against Insured (Liability Insurer's Failure to Settle),* 63 A.L.R.3d 627, 632–36, 641–49 (1975 & Supp. 1994).

> Courts enforcing the judgment rule, that the tort is complete when judgment becomes final, adopt the view that intangible harms are remedial in suits of this kind, and cite such factors as damage to credit and general reputation, loss of business opportunities, and the like, as sufficient in and of themselves to afford a basis for recovery.

Annotation, *Liability Insurer's Failure to Settle,* 63 A.L.R.3d at 632 (1975) (footnote omitted).

Under the majority view, a covenant not to execute is merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies if the injured party seeks to collect his or her judgment. *State Farm Mut. Auto. Ins. Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948, 953 (App.1979) (citing *Globe Indem. Co. v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372 (App.1977)).

### b. *Minority Jurisdictions*

Under the minority view, an insured protected by a covenant not to execute is not damaged by the entry of a judgment. These cases appear to follow the prepayment rule that requires payment of all or a portion of the judgment as a condition precedent to an action against the insurer. *See, e.g., Lida Mfg. Co., Inc. v. U.S. Fire Ins. Co.*, 116 N.C.App. 592, 448 S.E.2d 854, 856–57 (1994), *review denied*, 339 N.C. 738, 454 S.E.2d 653 (1995); *Stubblefield v. St. Paul Fire & Marine Ins. Co.*, 267 Or. 397, 517 P.2d 262, 264 (1973). *See also*, Annotation, *Liability Insurer's Failure to Settle*, 63 A.L.R.3d at 631–32, 637–39 (1975 & Supp.1994) (discussing the prepayment rule).

Cases following the minority view generally hold:

> An insured protected by a covenant not to execute has no compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer.... An individual who is uninsured due to an [insurance] agent's negligence then will have suffered no damages, as he would have had no rights under the policy anyway.

*Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d 135, 138 (8th Cir.1985) (citations and footnote omitted). *See also Oregon Mut. Ins. Co. v. Gibson*, 88 Or.App. 574, 746 P.2d 245, 247 (1987) (holding that the insurance agent was not liable in light of the covenant not to execute). Cases following this view have also expressed as a policy concern the likelihood of collusion between the insured and assignee, especially when a stipulated judgment is involved. *See Freeman*, 755 F.2d at 139.

### 3. *Hawai'i Follows the Majority of Jurisdictions*

■ After a careful review of all the facts in the instant case and the policies underlying the majority and minority views, we adopt the majority position. We recognize that the minority view raises acute concerns with regard to the likelihood of collusion between the insured and assignee, especially when a stipulated judgment is involved. However, rather than allowing a negligent party to escape liability because of a covenant not to execute, we believe that the better choice is to hold that a covenant not to execute does not *per se* eliminate the fact of damages and then to permit an injured plaintiff to recover damages from the insurer. *See* discussion, *supra*, at 564–65.

■ In the instant case, the trial court granted Atchison's motion for partial summary judgment and dismissed McLellan's complaint. In its order granting Atchison's motion, the trial court ruled that no damages can arise from Dr. Spear's assigned claims, as a matter of law, because Dr. Spear benefited from McLellan's covenant not to execute.

However, because a covenant not to execute upon the Stipulated Judgment, by itself, did not eliminate the fact of damages, *see* discussion *supra*, we hold that the trial court erred in its ruling. In addition, because the trial court presumed erroneously that the covenant, by itself, eliminated the fact of damages, we believe that the material fact issue of damages remains disputed and unresolved and, therefore, hold that the trial court erred in granting Atchison's motion of partial summary judgment.

### B. *Atchison Was Not Bound by the Proceedings in Civil No. 87–0115*

McLellan's last point on appeal asserts that the trial court erred in ruling that Atchison was not involved through privies and, therefore, was not bound by any of the proceedings in Civil No. 87–0115, including Atchison's liability and damages determined by the Stipulated Judgment. McLellan contends that although Atchison was not a party in Civil No. 87–0115, Atchison participated in that action through privies (Fireman's Fund). Therefore, according to McLellan, Atchison was bound by the Stipulated Judgment and is precluded by *res judicata* [7] and collateral

---

7. Under the doctrine of *res judicata*, the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the claims that were actual-

estoppel[8] from disputing it. In effect, McLellan asserts that Atchison was an agent of Fireman's Fund, therefore, the two were in privity. We disagree.

Fireman's Fund was not a party to the proceedings of Civil No. 87–0115 and the resulting Stipulated Judgment. The facts clearly state that Fireman's Fund agreed to provide a defense for Dr. Spear regarding Civil No. 87–0115. However, before trial, Dr. Spear discharged the attorney provided by Fireman's Fund and unilaterally entered into a stipulated judgment. As such, the only real parties in Civil No. 87–0115 were Dr. Spear/Family Medicine and McLellan. Clearly, Dr. Spear did not act as an agent or on behalf of either Fireman's Fund or Atchison.

▇ Since Fireman's Fund was not a party or in privity with a party in Civil No. 87–0115, it is of no consequence whether Atchison was in privity with Fireman's Fund. The answer remains the same, Atchison was not involved through privies in that action. Therefore, we hold that the circuit court correctly ruled that "Atchison was not involved directly or through privies in Civil No. 87–0115[.]" Since no privity existed between Atchison and any party in Civil No. 87–0115, we further hold that Atchison was not bound by the proceedings or precluded from disputing the results of it.

▇ One of the basic requirements for application of the doctrine of *res judicata* is that "the party against whom the plea of *res judicata* is asserted [was] a party or in privity with a party to the prior adjudication." *State v. Magoon,* 75 Haw. 164, 191, 858 P.2d 712, 725 (quoting *Morneau v. Stark Enter. Ltd.,* 56 Haw. 420, 424, 539 P.2d 472, 475 (1975)), *reconsideration denied,* 75 Haw. 580,

861 P.2d 735 (1993) (brackets in original omitted). Since there is no privity between Atchison and any party in Civil No. 87–0115, the doctrine of *res judicata* does not apply.

As to collateral estoppel, this court has stated that

collateral estoppel ... requires that, in the prior action, the issues sought to be precluded "have been both actually litigated and actually decided." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4419 at 177 (1981) (footnote omitted). *See also* Restatement (Second) of Judgments § 27 (1982). Accordingly, consent judgments do not ordinarily support collateral estoppel. 18 Wright, Miller & Cooper, *supra* § 4443 at 385.

*In re Dowsett Trust,* 7 Haw.App. 640, 645, 791 P.2d 398, 402, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 465, *cert. denied,* 71 Haw. 667, 833 P.2d 900 (1990). In *Dowsett Trust,* we concluded that collateral estoppel did not apply to preclude the present action because the prior case was dismissed based on a stipulated settlement and the issues in question were not actually litigated and decided. *Id.* For the same reasons, collateral estoppel does not apply to the instant case.

## IV. *CONCLUSIONS*

For the reasons expressed in this opinion, we reverse the circuit court's November 22, 1991 order granting Atchison's motion for partial summary judgment.

ly litigated in the first action, but also of all grounds of claim and defense that might have been properly litigated in the first action but were not litigated or decided.

*State v. Magoon,* 75 Haw. 164, 190, 858 P.2d 712, 725 (internal quotation marks, internal brackets, and citations omitted), *reconsideration denied,* 75 Haw. 580, 861 P.2d 735 (1993).

8. Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the

same parties or their privies.... Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue.

*Pele Defense Fund v. Paty,* 73 Haw. 578, 599, 837 P.2d 1247, 1261 (1992) (quoting *Morneau v. Stark Enter. Ltd.,* 56 Haw. 420, 423, 539 P.2d 472, 475 (1975)), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993).