BANKERS TRUST COMPANY,
Plaintiff–Appellee,

v.

OLD REPUBLIC INSURANCE
COMPANY, et al., Defendants–
Appellees.

Appeal of IMPERIAL CASUALTY AND
INDEMNITY COMPANY, Intervening
Plaintiff–Appellant.

No. 92–3688.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1993.

Decided Oct. 6, 1993.

Terry M. Grimm, George C. Lombardi, Winston & Strawn, Gerald G. Saltarelli, Mary L. Hayes, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, IL for Bankers Trust Co.

Richard A. Devine, Michael M. Marick, Bruce R. Meckler, Steven D. Pearson, Michael K. Bartosz, Pope & John, Chicago, IL, for Old Republic Insurance Co., Chicago Underwriting Group, Inc.

Brian Frankl, Peterson & Ross, Michael E. Dowd, Dowd & Dowd, Chicago, IL, for Employers Ins. Co. of Wausau.

Robert J. Lepri, Trizna & Lepri, Chicago, IL, for Lee Keeling & Associates, Inc.

Barry L. Kroll, Williams & Montgomery, Chicago, IL (argued), for Imperial Cas. & Indem. Co.

Before EASTERBROOK and MANION, Circuit Judges, and WOOD, JR., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Bankers Trust Company, which holds a tort judgment of $12.88 million against Lee A. Keeling & Associates, Inc. (LKA), began this diversity litigation against LKA's excess insurers. Details of the underlying suit, now on appeal in the tenth circuit, are not relevant to the dispute about insurance. Portions of the case have been here before. 959 F.2d 677 (1992). Imperial Casualty and Indemnity Company, LKA's primary insurer, intervened, seeking a declaration that its coverage has been exhausted. Imperial's policy limit is $2 million, and the parties agree that Imperial has incurred more than $2 million in legal expenses in the underlying litigation. According to Imperial, the costs of mounting a defense count toward the limit of its policy, so that it need not pay anything on the judgment. The district court disagreed, holding that defense costs do not count toward the policy limits. 1992 WL 201983, 1992 U.S.Dist. LEXIS 12199. The district court recently concluded that LKA's excess insurers are excused from payment because when applying for claims-made coverage LKA did not tell them about the festering dispute with Bankers Trust. 1993 WL 311787, 1993 U.S.Dist. LEXIS 11065. That aspect of the imbroglio is not (yet) before us.

We have only Imperial's appeal on a partial final judgment under Fed.R.Civ.P. 54(b), appropriate because the district court's declaratory judgment resolved the entire dispute between Bankers Trust and Imperial.

Like most primary insurance policies, Imperial's requires the underwriter to defend its insured in litigation and indemnify it if it is held liable. The obligation to defend and to indemnify are separate. It is possible to state a single cap on the costs of both, but few policies do so. Under most policies, the costs of defense are nominally unlimited, although the stakes of the case set an implicit limit: an insurer will expend only a fraction of its total exposure, for the alternative is to tender the policy limits in settlement. A primary insurer's choice may be complicated, however, when there is excess insurance, for the policies may interlock in a fashion that requires the primary carrier to put on a defense that will inure to the benefit of the excess carriers, or when state law requires an insurer to go on defending even after paying the policy limits. Apparently one or the other occurred in Bankers Trust's litigation against LKA, for otherwise Imperial acted foolishly in paying lawyers more than $2 million trying to ward off a judgment that from Imperial's perspective could not exceed $2 million.

■ Imperial believes that its policy is among the minority that counts defense expenditures toward the limit of liability. It did not tell LKA or its other insureds so in 1985, when it issued the policy; indeed, Imperial's interpretation of its policy appears to be a recent discovery. Nonetheless, Imperial now has adopted this view nationwide, for all its insureds. So far, it has lost every time. See *Biomass One, L.P. v. Imperial Casualty & Indemnity Co.*, 968 F.2d 1220 (9th Cir.); *International Insurance Co. v. Imperial Casualty and Indemnity Co.*, No. CV 91 5494 JGD, 1992 WL 547721 (C.D.Cal. Oct. 28, 1992), appeal pending, No. 92–56551 (9th Cir.). Imperial believes that because these opinions, like that of the district court in this case, are unpublished, it is entitled to stick to its guns. Lack of publication usually reflects the court's belief that the dispute is

one-sided, sapping the disposition of precedential value. So it is here. The district court's interpretation of Imperial's policy is obviously correct. To protect Imperial's policyholders from enervating litigation, we publish this opinion and trust that Imperial will desist.

■ Imperial promised in Section I of its policy "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as 'Damages' by reason of liability arising out of any negligent act, error, mistake or omission in rendering or failing to render · professional services of the type described in the Declarations". How much? Section IV of the policy, titled "LIMITS OF LIABILITY", provides:

> The liability of the Company for each claim which is first made during the Policy period shall not exceed the amount stated in the Declarations for "each claim", and, subject to that limit for each claim, the total limit of the Company's liability for all claims which are first made during the Policy period, as covered hereunder, shall not exceed the amount stated in the Declarations as "aggregate".

Off to the Declarations section of the policy, Item 6 of which (captioned "Limit of Liability and Deductible") reads:

> The liability of the Company for "each claim" which is first made during the policy period shall not exceed $2,000,000
> and, subject to that limit for each claim, the total of the Company's liability for all claims first made during the Policy period shall not exceed in the "aggregate" $2,000,000
> The limit of liability afforded under the Policy shall be subject to the deductible amount (set forth below) which shall be applicable to "each claim" and shall be inclusive of "costs, charges and expenses" $25,000

The reference to "costs, charges and expenses" sends us to Section III(e), one of the definitions:

> The words "costs, charges and expenses" shall mean: legal expenses, excluding the cost of investigation and adjustment of claims by salaried employees of the Company and fee adjusters, but including attorney's fees, arbitrator's fees, court costs, expenses incurred in obtaining expert testimony and the attendance of witnesses and costs incurred in connection with arbitration proceedings against the Named Insured; provided only those items of ex-

pense which can be directly allocated to a specific claim involving litigation or possible litigation shall be included.

There is so far no interpretive problem. Imperial will cover LKA's liability up to $2 million, after LKA satisfies the deductible of $25,000 per claim. Legal fees incurred in defense count toward the deductible, but the declarations omit any comparable mention of counting legal expenses toward the $2 million.

According to Imperial, the definition of "damages" in Section III(c) changes everything. This definition reads:

> The word "damages" shall mean: loss, judgments, settlements and "costs, charges and expenses", provided always that such subject of damages shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which the Policy shall be construed.

How this helps Imperial eludes us. "Damages" is not a term used in the limits of liability clause or the declarations. It appears in Section I, which establishes the obligation to indemnify. Section III(c) commits Imperial to indemnify LKA for any "costs, charges and expenses" that the court requires LKA to pay (or that Imperial agrees to pay in settlement). Thus Imperial will cover court costs, expert witness fees, legal fees, and the like, if the judgment requires LKA to pay these items to its adversary. If these items become parts of LKA's "liability" they count toward the $2 million. Nothing in the policy counts LKA's (or Imperial's) *defense* expenditures toward the $2 million; the contrast between the inclusion of these costs in the calculation of the deductible and their omission in the preceding two clauses could not be more stark.

If more is needed, one has only to consult Section VII(a), which specifies Imperial's obligation to defend:

> The Company shall defend any suit against the Insured seeking damages to which this insurance applies ... but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability

has been exhausted by payment of judgments or settlements.

This language would make no sense if Imperial's obligations could be exhausted by defense costs alone. Rather, it tells us that the limit is exhausted "by payment of judgments or settlements." If judgments or settlements include "costs, charges and expenses" paid to the adversary, then these outlays count toward the limit of liability; otherwise not. Half recognizing this implication, Imperial continues to defend LKA and the excess insurers on appeal in the tort litigation. The other half is equally true: Imperial still must indemnify LKA up to $2 million.

So far we have not said "boo" about the applicable law. Imperial is in much the same position. Its brief does not discuss which state's law applies. It cites three Illinois cases and one California case—although Imperial is a Nebraska insurer, LKA purchased the policy in Oklahoma, and LKA's engineering reports (on which its liability is based) were delivered to Bankers Trust in New York. We do not think the choice of law matters. The policy is clear. All Imperial can do is to say that our understanding of the relation between "damages" and "costs, charges and expenses" is not inevitable; but as the author of the policy Imperial is not well situated to take advantage of ambiguities. *Harnischfeger Corp. v. Harbor Insurance Co.*, 927 F.2d 974, 976 (7th Cir.1991); *Harbor Insurance Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir.1990); *Continental Casualty Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir.1990).

Contending that this appeal is frivolous, Bankers Trust asks for an award under Fed.R.App.P. 38. Imperial was skating on thin ice, but we do not think sanctions appropriate. Apparently Imperial issued thousands of policies using this language, and the high aggregate stakes justified the appeal even though Imperial had but a slight chance of prevailing. Sanctions under Rule 38 depend not only on a finding that the appeal was frivolous but also on a prudential judgment about appropriateness. See *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (in banc). Imperial's legitimate desire to obtain a definitive

decision makes sanctions inappropriate without regard to the strength of the arguments. As a three-time loser, however, Imperial must be prepared under both Rule 38 and Fed.R.Civ.P. 11 to make good its adversary's costs in any future litigation.

AFFIRMED.