**Janet C. WEBER, Plaintiffs,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. Civ. 04–00377 SPK/LEK.**

United States District Court,
D. Hawai'i.

Nov. 17, 2004.

Howard G. McPherson, Bert S. Sakuda, Cronin Fried Sekiya Kekina & Fairbanks Davies, Honolulu, HI, for Plaintiff.

Thomas E. Cook, Steven Y. Otaguro, Lyons Brandt Cook & Hiramatsu Davies, Honolulu, HI, Robert J. Romero, Anne D. O'Niell, Hinshaw & Culbertson LLP, San Francisco, CA, for Defendant.

ORDER (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING PLAINTIFF'S COUNTER–MOTION TO CERTIFY STATE LAW QUESTIONS

SAMUEL P. KING, District Judge.

### INTRODUCTION

This case presents several interrelated issues of first impression of Hawaii insurance law. Three motions are before the Court. First, Plaintiff Janet Weber ("Weber") moves for partial summary

judgment, seeking a declaration regarding the nature of a liability policy of Defendant Indemnity Insurance Company of North America ("Indemnity" or "IICNA") that covered Eco–Adventures, Inc., ("Eco–Adventures") in a related admiralty action. Second, in response, IICNA moves for summary judgment, primarily contending that Weber has no standing to enforce rights (either as a third-party, or as an assignee of Eco–Adventures) relating to the IICNA policy. Third, Weber asks this Court (if not inclined to rule on the merits of the other motions) to certify questions to the Hawaii Supreme Court. *See* Haw. R.App. P. 13 (Certification of Question of Hawai'i Law by Federal Courts).

The matters were argued on October 6, 2004. After due consideration of the issues, the Court (1) GRANTS Plaintiff's motion for partial summary judgment, (2) GRANTS in part and DENIES in part Defendant's motion for summary judgment, and (3) DENIES Plaintiff's countermotion to certify questions to the Hawaii Supreme Court.

### DISCUSSION

### I.

■ Weber asks this Court to declare that an insurance policy of IICNA is *not* a "defense within limits" ("DWL") or "cannibalizing" policy. A DWL policy includes the costs of defending an insured against a suit or claim within the limits of the policy, leaving less to pay a judgment or settlement or otherwise indemnify against a suit or claim against the insured.[1] The more

conventional liability policy includes only amounts of a judgment or settlement within the policy's limits; the costs to defend a claim or suit are separate and, theoretically, open-ended. *See, e.g., Bankers Trust Co. v. Old Republic Ins. Co.,* 7 F.3d 93, 94 (7th Cir.1993) ("The obligation to defend and to indemnify are separate. It is possible to state a single cap on the costs of both, but few policies do so. Under most policies, the costs of defense are nominally unlimited, although the stakes of the case set an implicit limit[.]").

This question arises from an underlying admiralty Jones Act personal injury action, *Weber v. Eco–Adventures, Inc.,* Civ. No. 02–00596ACK/BMK (D.Haw.), which settled in April of 2004 during trial before U.S. District Judge Alan C. Kay. The IICNA policy at issue insured Eco–Adventures against certain claims or suits, including the underlying action by Weber against Eco–Adventures. IICNA had retained the firm of Frame, Formby & O'Kane to defend Eco–Adventures. After extended mediation efforts, rather than accept IICNA's settlement offers of the (declining) remaining policy limits, Weber negotiated directly with EcoAdventures (not with Frame, Formby) to allow a stipulated judgment of $225,000 to enter against Eco–Adventures in exchange for an assignment by Eco–Adventures to Weber of all Eco–Adventures' bad faith rights as against IICNA. As part of the deal, Weber covenanted not to execute the stipulated $225,000 judgment against Eco–Adventures and to drop attempts to pursue per-

---

1. DWL insurance policies can create incentives for both claimants and insureds to settle early; the more they litigate, the less is left for indemnification. The nature of such policies can create potential ethical concerns. *See, e.g.,* Shaun M. Baldwin, *Legal and Ethical Considerations for "Defense Within Limits" Policies,* 61 Def. Couns. J. 89 (Jan.1994) ("DWL policies can present practical and eth-

ical dilemmas for both plaintiffs' attorneys and defense counsel because every dollar spent on defense reduces the amount available to satisfy potential judgments"); *see also* Gregory S. Munro, *Defense Within Limits: The Conflicts of 'Wasting' or 'Cannibalizing' Insurance Policies,* 62 Mont. L.Rev. 131, 146 (Winter 2001) (analyzing potential conflicts).

sonal claims against Eco–Adventures' shareholders, officers or directors.[2] The settlement process also included a finding or statement on the record by a U.S. Magistrate Judge and the mediator, based upon their participation in the settlement discussions, that the settlement amount was a "reasonable settlement" and "within an appropriate range" for the facts of the case.[3]

IICNA's policy limit was $300,000 per occurrence, and if the policy was indeed "cannibalizing" then much less than $300,000—and certainly less than the $225,000 stipulated judgment—was left to be paid to Weber after defense expenses (which were continuing to mount). However, if—as Weber contends—the policy was *not* "cannibalizing," then the entire $300,000 would have been available to settle the underlying suit. Weber's theory in the present suit is that IICNA breached a duty to Eco–Adventures (and perhaps to herself as the underlying plaintiff) to settle the underlying suit in good faith. *See, e.g., Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334, 346 (1996); *Tran v. State Farm Mut. Auto. Ins. Co.,* 999 F.Supp. 1369, 1372 (D.Haw.1998) ("an insurer who does not accept a reasonable settlement offer within policy limits is also liable for violation of its duty to act in good faith regarding the interests of the insured") (citing *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1036–37 (1973)).

Weber brings first-party (as Eco–Adventures' assignee) and third-party (as a third-party beneficiary) bad faith claims against IICNA, and seeks declaratory relief and $225,000 on the consent judgment as well as general, punitive and emotional distress damages. The nature of the policy, i.e., whether or not it is a DWL policy, might be relevant in determining whether IICNA breached good faith duties. Weber filed the suit in state court. IICNA removed it to federal court based upon diversity jurisdiction. The parties agree that substantive Hawaii law controls in interpreting the marine insurance policy. *See, e.g., Yu v. Albany Ins. Co.,* 281 F.3d 803, 806 (9th Cir.2002).

## II.

■ Initially, as the Court indicated at oral argument, the Court exercises its discretion and declines to certify to the Hawaii Supreme Court any of the questions of law raised and discussed later in this order. *See Pai 'Ohana v. United States,* 875 F.Supp. 680, 700 (D.Haw.1995) ("The decision to certify a state law question is within the sound discretion of the federal district court"). Although there is no binding Hawaii law precedent directly on point on many of the state-law questions raised, the Court finds sufficient case law from Hawaii and other jurisdictions to be able to predict Hawaii law with confidence. *See, e.g., CIM Ins. Corp. v. Masamitsu,* 74 F.Supp.2d 975, 986 (D.Haw.1999) (stating that a district court, sitting in diversity,

---

**2.** The Court overrules IICNA's various evidentiary objections, filed on September 24, 2004, regarding the documents, correspondence, and negotiations between Weber and IICNA.

**3.** *See* Transcript of April 8, 2004, hearing before the Honorable Barry M. Kurren, United States Magistrate Judge:

THE COURT:.... As far as my own assessment, based on my participation in the settlement discussions with the parties that

I've had over quite some time, and further discussing this case with [mediator Keith Hunter], I certainly conclude, and am of the opinion, that it's within the reasonable—it is within an appropriate range for purposes of settlement, and it would be therefore a reasonable settlement of the case. I can make that assessment.

 . . . . .

MR. HUNTER: I concur.
[Plaintiff's Exh. S, at 11–13].

uses its "best judgment to predict how the Hawaii Supreme Court would decide [the] issue") (quoting *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir.1997)). " 'In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions.' " *Id.* (quoting *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980)). The Court thus DENIES Plaintiff's Counter Motion to Certify State Law Questions, filed on September 17, 2004.

## III.

■ IICNA, contends that the circumstances of the settlement of the underlying suit (e.g., the timing and procuring of the stipulated judgment) bar an independent bad faith action against IICNA, or at least render the judgment unenforceable. IICNA point out that it did not consent to the settlement. It contends that EcoAdventures violated the policy's standard provisions allowing an insurer to control the defense of its insured.[4] It raises the policy's cooperation clauses.[5] The implication is that the underlying case—especially after a portion of Weber's case against Eco–Adventures was presented at trial before

Judge Kay—was weak. IICNA was defending Eco–Adventures; if IICNA's defense of Eco–Adventures was successful, then Eco–Adventures would have been exonerated.[6] Because the policy gives IICNA the right to control the defense, IICNA argues that it had a right to have the underlying trial proceed to judgment, rather than have Weber and IICNA's insured—from IICNA's point of view—collude to "set-up" the insurance company. It claims that it was at all times complying with the policy's duties, at least insofar as it was providing a defense to Eco–Adventures.

The legal question may be stated as follows: Where a judgment has resulted from a settlement between the insured and the underlying claimant (rather than from a trial), and as part of the settlement the claimant covenants not to execute the judgment against the insured, may the claimant, as the insured's assignee, pursue a bad faith claim against the insurer. It is a threshold issue. The Court should resolve it before reaching the merits of whether or not IICNA's policy was cannibalizing. A finding that Weber cannot enforce the stipulated judgment, and is

---

**4.** The policy provides "We may satisfy, settle or defend, as We consider appropriate, any claim or suit for such damage." [Plaintiff's Exh. 2A, at 8].

**5.** Section E of the policy provides, in pertinent part:

In the event of any loss, that is covered by this policy, any person presenting a claim must:

. . . . .

4. COOPERATE WITH US: Cooperate with Us in all ways in the investigation, defense and settlement of any loss. . . .

. . . . .

6. PRESERVE OUR RIGHTS: Assume no obligation, admit no liability or incur any expense for which We are or may become liable without Our written permission except expenses incurred to protect the insured Property from further loss.
[Plaintiff's Exh. 2A, at 11].

**6.** The converse argument is that IICNA was gambling—especially if the policy was indeed cannibalizing—with Eco—Adventures' money because an excess judgment against EcoAdventures would not be covered. Weber points out that IICNA has a good faith duty to consider the best interests of its insured. This good faith duty comes with the insurer's right to control the defense. *See, e.g., Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir.1994) ("A standard provision in liability-insurance contracts gives the insurer control over the defense of any claim against the insured, and an implied correlative of this right is the duty not to gamble with the insured's money by forgoing reasonable opportunities to settle a claim on terms that will protect the insured against an excess judgment") (citations omitted).

otherwise unable to pursue bad faith claims against IICNA, renders the nature of the policy moot.

IICNA relies on a California Supreme Court case that finds such stipulated judgments not binding on the insurer *unless* the insurer has refused to defend its insured (which did not occur here). *See Hamilton v. Maryland Cas. Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002). In similar circumstances, *Hamilton* held that, because it was at all times defending the insured, the insured's liability could not be fixed by agreement of the parties in the underlying case, but had to be determined by trial (presumably the underlying trial). *Id.* at 136–37. *Hamilton* went on to hold that a bad faith action for breach of a duty of reasonable settlement was barred. *Id.* at 137–38; *see also Mercado v. Allstate Ins. Co.,* 340 F.3d 824, 827 (9th Cir.2003) (stating, under California law after *Hamilton,* that "plaintiff/assignee could not sue the insurer in tort for its alleged bad faith refusal to settle the case until an excess judgment was rendered after a trial in that case").

Weber responds by citing a contrary Alaska case and a Hawaii Intermediate Court of Appeals case, which appear to allow such stipulated agreements if it can be proven that the insurer violated a duty to settle in good faith. *See Washington Ins. Guar. Ass'n v. Ramsey,* 922 P.2d 237 (Alaska 1996) (applying Washington law); *McLellan v. Atchison Ins. Agency, Inc.,* 81 Hawai'i 62, 912 P.2d 559 (Hawaii App. 1996). Weber asks this Court to reject the approach taken in *Hamilton* and, instead, follow the approach as analyzed in *Ramsey.*[7]

After due consideration of the arguments and case law, the Court agrees with Weber. Although no Hawaii case is directly on point, existing Hawaii law does indicate that Hawaii would reject the California approach. *See McLellan,* 912 P.2d at 564–65 ("In cases where a judgment is entered against the insured after an insurer wrongfully fails to settle a claim within policy limits or defend the insured at trial, a slim majority of jurisdictions permit an injured plaintiff, the insured's assignee, to recover damages from the insurer despite the existence of a covenant not to execute . . . . we adopt the majority position") (citations and editorial marks omitted). This Court finds that Hawaii law does not, as the California Supreme Court found in *Hamilton* under California law, allow such stipulated judgments *only* in situations where an insurer fails to defend an insured.[8] *See also Crawford v. Infinity Ins.*

---

**7.** Such agreements have also been upheld in, among other jurisdictions, Minnesota and Arizona, where the insurer is defending under a reservation of rights. *See Miller v. Shugart,* 316 N.W.2d 729, 733 (Minn.1982) (allowing insured to enter consent judgment along with covenant not to execute in exchange for assignment of bad faith rights, in situation where insurer reserved rights); *United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987). The Court has not found a published opinion that, like the present action, involves a potential or actual DWL policy.

**8.** *Cf. Charter Oak Fire Ins. Co. v. Color Converting Indus. Co.,* 45 F.3d 1170 (7th Cir. 1995). There, Judge Posner observed when analyzing a bad faith argument that

[the insured] might reply that the danger of collusion is exaggerated. If the insured does settle and then turns around and seeks reimbursement from the insurance company, it will have to prove that the settlement was reasonable. Indeed it will. *E.g., Isaacson v. California Ins. Guarantee Ass'n,* 44 Cal.3d 775, 244 Cal.Rptr. 655, 666, 750 P.2d 297, 308 (1988); *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982). These are cases in which an insured settled in circumstances where, because the insurance company had not conceded coverage, the insured's personal assets were at risk. *They are analytically similar to cases in which the insurance company's foot-dragging* [e.g., bad faith failure to settle] *places the insured at risk of an excess judgment. Nothing in our*

*Co.,* 139 F.Supp.2d 1226, 1230 (D.Wyo. 2001) ("an insured may enter into a reasonable settlement agreement where the insurer acts with bad faith in failing to settle a claim within the policy limits"), *aff'd,* 64 Fed.Appx. 146 (10th Cir.2003).

*Hamilton* is also distinguishable because it did not involve a policy with (allegedly) "burning" limits, with concomitant potential ethical concerns. *See supra* note 1. Although in a reservation of rights context, the Minnesota Supreme Court's reasoning in *Shugart* could apply here. The *Shugart* opinion reasoned, in part, as follows:

> While the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim.... If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer.... On the facts of this case we hold, therefore, that the insureds did not breach their duty to cooperate with the insurer, which was then contesting coverage, by settling directly with the plaintiff.

316 N.W.2d at 733–34. While it is true that IICNA was not "contesting coverage" in that it was defending Eco–Adventures without reserving a coverage issue, it was purporting to apply a cannibalizing policy with shrinking limits and the attendant pressures. In a sense, a true cannibalizing policy inherently creates a situation where an excess judgment against an insured is possible.

As the Alaska Supreme Court observed (after *Ramsey* ) in *Great Divide Ins. Co. v. Carpenter,* 79 P.3d 599 (Alaska 2003), the focus ought first to be on whether the insurer has materially breached its obli-

gation (such as committing a tort of bad faith failure to settle) to the insured. That is, *if* an insurer has violated a duty to settle in good faith, "the insurer cannot escape liability merely because the insured [such as Eco–Adventures] has taken control of the defense and settled the case in a manner that, except for the insurer's material breach, would violate the cooperation clause or other terms of the insurance contract." *Id.* at 609–10.

To hold otherwise would mean, as a matter of law, that an insurer would automatically be insulated from a violation of a good faith duty to settle, regardless of the breach, if only because of a rule that the contractual duty to cooperate was violated by the insured. At this point in the litigation, the Court assumes for present purposes that IICNA acted in bad faith. Although IICNA's motion seeks "summary judgment," it is essentially seeking a ruling on the pleadings that Weber cannot prevail as a matter of law. Thus, for purposes of this motion only, the Court must assume as true the *allegations* of the complaint that IICNA violated a duty to settle. *See generally Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1549 (9th Cir.1989) ("For purposes of the motion [for judgment on the pleadings], the allegations of the non-moving party must be accepted as true"). Whether Weber can *prove* bad faith, of course, is another matter. This assumption is especially apt at this stage because the bad faith suit has essentially just begun—the Complaint was filed in June in state court. There has been no discovery into bad faith aspects (e.g., claims handling) of the suit; the present issue of whether the consent judgment is otherwise enforceable is a pure question of law.

opinion is intended to question the insurance company's liability in either type of case.

*Id.* at 1174 (emphasis added).

Assuming for purposes of these motions that IICNA failed in bad faith to settle the underlying suit, Weber would probably be excused from its concomitant duties to co-operate and to allow the insurer to control the defense (and all the more so where the policy is asserted to be cannibalizing). *See Great Divide Ins. Co.*, 79 P.3d at 609–10; *see also* Stephen S. Ashley, *Bad Faith Actions: Liability and Damages* § 3:39 at 3–112 (2d ed.1997) ("a party in breach of a contract may not insist that the other party perform his obligations under the same contract"); Allan D. Windt, *Insurance Claims and Disputes* § 3:11 at 227 (4th ed. 2001) ("An insured . . . should no longer be bound by contractual obligations if the insurer breaches . . . its duty to act reasonably and diligently to safeguard the interests of the insured in connection with the settlement of a dispute in which the insured is being or could be sued . . . or its general covenant of good faith and fair dealing") (citing cases). The same reasoning refutes IICNA's argument that the policy's "no-action" clause bars Weber's suit.[9] On the other hand, if there was no bad faith, the question of whether the stipulated judgment is enforceable is essentially moot. That is, if there was no bad faith, the insured's concomitant duties come back into play.

Accordingly, the Court DENIES IICNA's motion in part, i.e., to the extent it seeks to dismiss the suit based upon the enforceability of the stipulated judgment and assignment to Weber of Eco–Adventures' bad faith claims.

## IV.

The Court therefore reaches the merits of the legal question whether or not the IICNA policy is a DWL policy. The policy has $300,000 limits to pay "*all loss, damage or expense*" resulting from.. any one accident or event."[10] However, the policy does not define "loss, damage or

---

9. Section F of the policy provides in part:
LEGAL ACTION AGAINST US: An Insured Person may not take legal action against Us unless all terms of this policy have been complied with.
[Plaintiff's Exh. 2.A, at 13].

10. The policy provides, in pertinent part, as follows (with emphasis added on particular phrases):
SECTION B-LIABILITY INSURANCE
1. *COVERAGE PROVIDED*
Subject to the exclusions below, We will pay for Bodily Injury or Property Damage *for which the Insured Person becomes legally liable to pay* through the ownership, maintenance or use of the Vessel, up to the limits stated in Section B of the Declaration Page [$300,000], including collision liability, excess of the amount covered by the collision clause under Section A, 2. B.

3. LIMITS OF LIABILITY
We will pay no more than the amount of insurance shown in Section B of the Declaration Page [$300,000] *for all loss, damage or expense* resulting from:
A. Any one accident or event.

B. Any series of accidents arising out of the same event[.]
4. *ADDITIONAL CLAUSES*

. . . . .

B. SUPPLEMENTARY PAYMENTS: *In addition to the limit of liability* shown on the Declaration Page under Section B, We will pay on behalf of the Insured Person:

. . . . .

iii. Reasonable expense incurred by Us or at our request. However, loss of earnings resulting from attendance at court proceedings at Our request shall not exceed Fifty Dollars ($50) per day.

. . . . .

D. SETTLEMENT AND DEFENSE: We may satisfy, settle or defend, as We consider appropriate, any claim or suit for such damage. Our obligation to satisfy, to settle or defend ends when the amount We pay equals Our limit of liability for this coverage.
[Plaintiff's Exh. 2.A, at 7–8].

expense." IICNA interprets "expense" to include plainly within it the costs and "expenses" of defending the underlying suit (i.e., the costs and attorneys' fees IICNA pays to defend Eco–Adventures). Weber, however, contends that, without a definition, the term is unclear and ambiguous. She cites to cases and commentators indicating that a policy should specifically define covered "expenses" or "losses" as including the legal costs and fees spent to defend the underlying suit to make clear that the policy is in fact "cannibalizing." *See, e.g.*, Baldwin, *Legal and Ethical Considerations for "Defense Within Limits" Policies*, 61 Def. Couns. J. at 90 ("The most common method of including defense costs within the limits of the policy is to expand the policy's definition of 'loss' to include costs and expenses"); *compare Helfand v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (1992) (finding directors and officers liability policy to be a DWL policy where policy expressly defined "loss" as including "costs, charges and expenses ... incurred in the defense of actions").

The Court finds it significant that the policy does not specifically define "expense" to include defense costs. This omission renders the term (at best) ambiguous. In *McCuen v. American Cas. Co. of Reading, Pennsylvania*, 946 F.2d 1401 (8th Cir.1991), for example, the insurer argued the opposite of what IICNA is arguing here—the insurer contended that "expenses" *excluded* attorneys' fees and costs of defense (in a provision regarding which "expenses" were to be excluded from payment as they were incurred). The Eighth Circuit, applying Iowa law, found the term ambiguous because it was not defined. It reasoned as follows:

Although it is now apparent that American Casualty intended by the word "expenses" to exclude attorneys' fees and costs of defense from the general rule of

Clause 1(d) [i.e., include fees and costs as "expenses" to be excluded], now is too late. *It chose not to define "expenses" in the policy.* Even if American Casualty's interpretation of the policy is a reasonable one, it cannot prevail. The District Court found, and we agree, that the insureds' interpretation of the policy is also reasonable. Thus, *the policy is ambiguous* and, following time-honored rules governing insurance policies, must be construed against American Casualty.

*Id.* at 1407 (emphases added).

*McCuen* relied in part on the Ninth Circuit's holding (interpreting Hawaii law) in similar circumstances in *Okada v. MGIC Indem. Corp.*, 823 F.2d 276 (9th Cir.1986). In *Okada*, the Ninth Circuit also rejected an insurer's argument that "expenses" includes defense costs, where the policy did not define the term "expenses." The primary rationale of the Ninth Circuit's decision was that the policy did not define "expenses." *See id.* at 281 ("Nowhere are 'expenses' defined .... When the policy means to refer to defense costs ... it expressly does so, avoiding the confusion that is [the insurer's] downfall here"). In other words, IICNA's "plain language" argument fails. *See also Branning v. CNA Ins. Cos.*, 729 F.Supp. 728, 732–33 (W.D.Wash.1989) (finding policy ambiguous as to whether defense costs were included within liability limit, "in the absence of any clear statement that defense costs are included within the cap," and commenting "[i]f [the insurer] intended the 'limit of liability' to apply to all losses, rather than only the amounts needed to resolve claims against the insureds, it would have been a simple matter for [the insurer] to have made that clear"); *cf. International Ins. Co. v. Imperial Cas. & Indem. Co.*, 1992 WL 547721 (C.D.Cal. 1992) (finding an insurance policy obligating a primary insurer to indemnify for

"damages" which were defined to include "costs, charges and expenses" *not* to be a DWL or "self-reducing" policy).

Similarly, courts have held that, where an insurer includes "costs, charges and expenses" within the limits of liability, the phrase does *not* include the costs of defending the underlying claim or suit if the policy does not specifically define "costs, charges and expenses" so as to include defense expenditures. *See Bankers Trust Co.,* 7 F.3d at 95 (finding a requirement that insurer indemnify up to the policy limits for "damages"—where "damages" included "loss, judgments, settlements, and *costs, charges and expenses* "—to mean only attorneys fees and costs that are assessed as part of an underlying judgment, *not* attorneys fees and costs to defend the underlying claim);[11] *see also Planet Ins. Co. v. Mead Reinsurance Corp.,* 789 F.2d 668, 671–72 (9th Cir.1986) (same under Arizona law).[12]

Likewise, in analogous situations with the same language ("all loss, damage or expense") from indemnity contracts, courts generally find that attorneys' fees and defense costs are included only where specifically identified. *See, e.g., Singleton v. County of Cook,* 53 Ill.App.3d 994, 11 Ill. Dec. 773, 369 N.E.2d 227, 229 (1977) (reasoning that "expenses and attorney's fees are recoverable only where required by the specific terms of a written contract of indemnity" and finding defense expenses not included within language requiring indemnification for "all loss, damage or expense that [indemnitee] may sustain as a result of any suit, actions, or claims");

*National Minority Supplier Dev. Council Bus. Consortium Fund, Inc. v. First Nat'l Bank of Olathe,* 83 F.Supp.2d 1200, 1206 (D.Kan.1999) (reasoning that "express language beyond general terms referring variously to expenses is necessary to allow recovery of attorney fees" in an indemnification agreement); *Starr v. Union Pac. R.R. Co.,* 31 Kan.App.2d 906, 75 P.3d 266, 272 (2003) (finding that lack of specificity in defining "loss, damage or injury" in indemnification agreement manifested intent not to include defense fees).

Finally, Weber also points to the "supplementary payments" provision on the same page of the policy, where IICNA agrees to pay "reasonable expenses incurred by [the insurer]," *in addition* to the limits of liability. This seems to imply that, if such "expenses" are "supplemental," then the same expenses are *not* included within the liability limits of the policy—a further reason to find ambiguity as to the meaning of "expenses."

To read "expenses" as IICNA asserts so as to require the limits to include—without a specific definition of expenses—*all* defense costs incurred by the insured as a result of a covered accident or event, could also imply that IICNA would be responsible for costs and fees of Eco–Adventure's other attorneys not retained by IICNA (e.g., Mr. Capron who represented Eco–Adventures in negotiations and correspondence with IICNA and with the retained firm of Frame, Formby & O'Kane) if those expenses were incurred because of the underlying suit. But the policy obligates

---

**11.** The parties in *Bankers Trust* had not addressed which state's law applied, but the Seventh Circuit observed that "[w]e do not think the choice of law matters," 7 F.3d at 96, implying that the result would be the same under almost any statement of insurance law.

**12.** Further, in a related context interpreting Hawaii law, this Court has found it significant

that a policy omitted "attorneys' fees" from a definition of covered "costs." *See Masamitsu,* 74 F.Supp.2d at 993 (finding policy not to cover defense fees as "costs taxed against the insured" in a supplementary payments provision, reasoning in part that "[t]he policy could have also provided for 'attorneys' fees' awarded against an insurer.... It did not").

IICNA to defend Eco–Adventures against covered events; it does not appear to contemplate Eco–Adventures incurring its own costs and expenses to defend and then have those costs and expenses reimbursed by IICNA. Thus, Weber points to other language of the policy to support its position. Specifically, the policy provides that IICNA "will pay for Bodily Injury or Property Damage *for which the Insured Person becomes legally liable to pay ...* up to the limits stated in Section B[.]" [Plaintiff's Exh. 2.A, at 7]. Eco–Adventures would never "become legally liable to pay" the costs of defending against the underlying action—such responsibility to defend an otherwise covered action would be IICNA's obligation. In other words, the defense costs would not be included within the limits of the policy. At minimum, this language supports the idea that Weber's reading of the policy (that it is not a DWL policy) is plausible and reasonable, and therefore IICNA's "plain language" argument fails because the plain language argument implies that no other reading is reasonable.

The Court is not convinced by IICNA's attempts to distinguish these cases on the grounds that they interpret different policy language (e.g., "losses" or "damages" instead of "expenses") or are in a different context (whether the defense costs are to be paid contemporaneously, or in a dispute with an excess insurance carrier). The point is simply that, if the insurer wants a liability policy to be a DWL or cannibaliz-

ing policy, it needs to say so specifically. The insurer needs to define the limits (e.g., covered "expenses" or "losses" or "damages") as including costs and fees to defend the underlying claim or suit, as was done, for example, in *Helfand,* 13 Cal. Rptr.2d at 299–300. All the more so given the nature of DWL insurance policies.[13]

Given that the term "expenses" is ambiguous, it follows that the term is construed against IICNA. *Yu,* 281 F.3d at 807 ("all ambiguities must be resolved against the insurer"); *Allstate Ins. Co. v. Pacheco,* 851 F.2d 257, 259 (9th Cir.1988) ("Hornbook law, good in Hawaii as elsewhere, requires that an ambiguity be construed against the insurer that issued the policy"); *cf. Bankers Trust,* 7 F.3d at 96 ("The policy is clear. All Imperial can do is say that our understanding of the relation between 'damages' and 'costs, charges and expenses' is not inevitable; but as author of the policy Imperial is not well situated to take advantage of ambiguities") (citations omitted). Indeed, it appears to the Court that the policy unambiguously does *not* include defense costs and expenses within the limits of liability.

Accordingly, the Court finds that the IICNA policy is not a DWL policy. It does not include within the limits of liability the costs, fees, and expenses of defending Eco–Adventures against Weber's claims in the underlying suit, *Weber v. Eco–Adventures,* Civ. No. 02–00596ACK/BMK (D.Haw.) The Court GRANTS Weber's Motion for Partial Sum-

---

**13.** Because of the nature of a DWL policy, some jurisdictions require specific disclosures by statute. *See* Or.Rev.Stat. § 642.063(2) ("A liability insurance form filed under this section may not be approved unless the form contains a statement approved by the director disclosing that the costs of defending a claim under the policy are included in the policy limits").

Some jurisdictions *ban* DWL policies, with certain exceptions for professional liability

policies like directors and officers policies or large commercial risks. *See* Minn.Stat. § 60A.08, subd. 13 ("Reduction of limits by costs of defense prohibited. (a) [With certain exceptions set forth in section (b)] No insurer shall issue or renew a policy of liability insurance in this state that reduces the limits of liability stated in the policy by the costs of legal defense.").

mary Judgment seeking such a declaration.

Of course, at this point, this finding does not mean IICNA necessarily acted in bad faith in failing to settle. There has apparently been no discovery into bad faith aspects of the suit, and the parties have not sought rulings on the merits of such claims. Issues of bad faith presumably await further proceedings.

## V.

██ IICNA also moves for summary judgment on Count II (third-party bad faith), contending that—regardless of whether she can pursue bad faith claims as an assignee of Eco–Adventures—Weber cannot bring a bad faith claim of her own as an intended beneficiary of the Eco–Adventures/IICNA insurance policy. IICNA relies on *Simmons v. Puu*, 105 Hawai'i 112, 94 P.3d 667 (Haw.2004), which was issued after Weber originally filed this action. In this regard, the Court agrees with IICNA. *Simmons* precludes third-party bad faith claims. *See id.* at 122–23, 94 P.3d at 677–78 ("any formal recognition of a claim for relief in favor of an injured claimant against a third-party tortfeasor's insurance company for bad faith settlement practices would require the assignment of the insured tortfeasor's rights arising from an underlying insurance contract to the injured plaintiff").

The Court is not convinced by Weber's arguments that *Simmons* is inconsistent with a prior Hawaii Supreme Court case, *Hough v. Pacific Ins. Co.*, 83 Hawai'i 457, 927 P.2d 858 (Haw.1996), which allowed a third-party bad faith claim by an employee against an employer's workers compensation carrier. To the extent *Hough* allows third-party bad faith claims, the rule appears to be restricted to a workers compensation situation where an employee is a specific intended beneficiary of a workers compensation carrier. *Id.* at 468, 927 P.2d

at 869 ("an employee is not merely a potential claimant in relation to his or her employer's workers' compensation insurance contract. An employee is an intended third-party beneficiary of an employer's contract with an insurance company for workers' compensation coverage."). Although Weber's situation does collaterally involve maintenance and cure (akin to workers compensation for certain admiralty workers), count II of her bad faith suit is based upon duties owed or not owed as a third-party beneficiary of a liability policy.

Further, although *Simmons* dealt with a self-insurer (Budget Rent–a–Car) being sued by a third-party (not with an insurance contract per se), the statement of Hawaii law was not so limited. *Simmons* clearly stands for the proposition that an injured claimant has no standing solely as a third-party to an insurance contract to sue the insurer for bad faith breach of that contract. *Id.* at 120–23, 94 P.3d at 675–78 (discussing case law).

The Court GRANTS IICNA's motion for summary judgment in part, i.e., to the extent it seeks to dismiss Count II for third-party bad faith.

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Plaintiff's motion for partial summary judgment [docket entry 9], (2) GRANTS in part and DENIES in part Defendant's motion for summary judgment [docket entry 13], and (3) DENIES Plaintiff's counter-motion to certify questions to the Hawaii Supreme Court [docket entry 27].

IT IS SO ORDERED.