21-1250-cv
*Gueye v. People's United Bank, Nat'l Ass'n*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of June, two thousand twenty-two.

PRESENT:
> **ROSEMARY S. POOLER,**
> **ROBERT D. SACK,**
> **MICHAEL H. PARK,**
> *Circuit Judges.*

———————————————————————

SOKHNA GUEYE,

> *Plaintiff-Appellant,*

> v.                                                          21-1250

PEOPLE'S UNITED BANK, NATIONAL ASSOCIATION,

> *Defendant-Appellee.*\*

———————————————————————

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | SUBHAN TARIQ, The Tariq Law Firm, PLLC, Long Island City, NY. |
| FOR DEFENDANT-APPELLEE: | DIANE WINDHOLZ, (Kenneth D. Sommer, *on the brief*), Jackson Lewis P.C., New York, NY. |

———————————

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Sokhna Gueye, a black Muslim Senegalese-American woman, sued Defendant People's United Bank, National Association (the "Bank") for discrimination under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Gueye alleged that the Bank discriminated against her on the basis of race, religion, and national origin when it closed her personal and business accounts and refused to reopen them.

On March 25, 2021, the district court granted the Bank's motion for summary judgment, finding that Gueye failed to establish a prima facie case of discrimination for her section 1981 and NYSHRL claims. The court also found that Gueye failed to raise a material issue of fact as to her NYCHRL claim. Gueye appealed and now argues that the district court erred by failing to view the record in the light most favorable to her. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

We review the district court's grant of summary judgment *de novo*. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "Such relief should be granted by the district court only when it determines there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "In deciding the motion, the trial court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." *Id.*

**I.      42 U.S.C. § 1981 and NYSHRL Claims**

At the summary judgment stage, claims under 42 U.S.C. § 1981 and NYSHRL are governed by the *McDonnell Douglas* burden-shifting framework.[1]   *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination by showing (1) she belonged to a protected class; (2) was qualified; (3) suffered an adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent.   *See Tolbert*, 790 F.3d at 435.   If the plaintiff "succeeds in establishing a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action."   *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).   "If the defendant proffers such a reason, the presumption of discrimination . . . drops out of the analysis, and the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."   *Id.* (internal quotation marks omitted).

We agree with the district court that Gueye failed to establish a prima facie case of discrimination.   The record is devoid of evidence showing "circumstances giving rise to an inference of" the Bank's "discriminatory intent."   *Tolbert*, 790 F.3d at 435 (internal quotation marks omitted).   As the district court aptly noted, "[a]t bottom, Gueye offers only assumptions

---

[1] Section 1981 claims apply only to racial discrimination and require that the plaintiff "allege facts supporting the following elements: (1) plaintiff[] [is a] member[] of a racial minority; (2) defendant['s] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," which "include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'"   *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (quoting 42 U.S.C. § 1981(a)).   Meanwhile, the relevant NYSHRL provision prohibits any "owner, . . . agent[,] or employee of any place of public accommodation" to discriminate based on, *inter alia*, race, national origin, or creed.   N.Y. Exec. Law § 296(2)(a).

and conclusory statements, which cannot support a *prima facie* case of discrimination." Special App'x at 15; *see, e.g.*, Joint App'x at 873 (Gueye declaring that "I had to assume the reason [the Bank] refused to reopen my accounts was because I am a Muslim woman who was operating a Muslim not-for-profit and who was travelling to Muslim countries."). Gueye's conclusory declarations and deposition testimony, standing alone, are insufficient to defeat summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir. 2005).

Moreover, Gueye fails to provide any evidence of unusual or suspicious circumstances to support her claims. *Cf. Menaker v. Hofstra Univ.*, 935 F.3d 20, 36–37 (2d Cir. 2019) (explaining that a defendant's procedural irregularities could raise an inference of discrimination). Instead, the record shows that the Bank closed Gueye's personal and business accounts for nondiscriminatory reasons. As to Gueye's personal accounts, they were closed after being flagged by the Bank's monitoring system due to various transactions Gueye executed in high-risk jurisdictions such as Senegal, Kuwait, and the United Arab Emirates.[2] The Bank followed its internal procedures and attempted to reach Gueye for more information about these transactions. Unable to contact Gueye, the Bank ultimately closed her personal accounts after members of its internal working group—who had never met Gueye—concluded that her banking activity exceeded the Bank's risk tolerance.[3] The bank also closed Gueye's business account, which she

---

[2] As the Bank's Senior Vice President of Loss Management and Deposit Risk testified, the Bank used a software that designated certain countries as "high-risk" based on factors such as prevalence of "terrorist financing, money laundering, [and] high rates of crime." Joint App'x at 88.

[3] The Bank cited to concerns such as "[c]ash deposited from an unknown source of funds," "[h]igh-velocity activity in high-risk jurisdictions," "[l]ittle or no concern for product performance penalties," and "[i]nconsistency of the addresses involved." Joint App'x at 1067–68. More generally, the Bank's closure report noted that "[t]he manner in which the cash is deposited into the account, immediately followed by various debit card purchases and multiple high-velocity ATM withdrawals involving geographies known for high-risk suspicious activities is concerning." *Id.* at 1067.

4

opened for her non-profit organization, sixty days after it entered overdraft. Following its internal policies, the Bank sent numerous letters to the address on file, warning Gueye that it may close the account if she did not settle the overdraft.[4] Hearing nothing, the Bank closed the account.

Gueye contends that the district court erred in granting summary judgment for the Bank because (1) it should have denied the motion based on a 2017 finding by the New York State Department of Human Rights ("NYSDHR") that Gueye's allegations established probable cause for a public hearing; and (2) the Bank's justification for closing her personal accounts—*i.e.*, that they exceeded the Bank's risk tolerance—was a post-hoc rationalization fabricated after the commencement of litigation. We find both arguments unpersuasive.

First, the NYSDHR's finding of probable cause is not dispositive of a subsequent motion for summary judgment filed in federal court. The NYSDHR's finding was based on Gueye's administrative complaint, the Bank's answer to that complaint, and the interview of one Bank employee.[5] It is only at the public hearing that "all relevant evidence is presented[,] and the testimony of witnesses is taken under oath and subject to cross-examination." Joint App'x at 916. Meanwhile, at the summary judgment stage, a court's determination is based on a well-developed record after the close of discovery. Second, the record provides no basis for Gueye's claim that

---

[4] Although the Bank concedes that Gueye's business account entered overdraft due to the Bank's own inadvertent error, this raises no inference of discriminatory intent. Anti-discrimination law does "not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*." *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998).

[5] Gueye filed a complaint with the NYSDHR on February 10, 2017, asserting that the Bank's decision to close her accounts was driven by religious, racial, and ethnic animus. **[A928.]** A NYSDHR investigator interviewed the employee whom Gueye talked with when she attempted to reopen her accounts after returning to the U.S. Based on this employee's statement that Gueye's accounts were closed "due to something about the countries [Gueye] had travelled to," the NYSDHR concluded that "[t]here [were] material factual disputes between the parties which are best resolved at a public hearing." Joint App'x at 930–31. But Gueye dismissed her NYSDHR action before any hearing and instead filed this action. *Id.* at 75.

5

the Bank's justification for closing her accounts was a fabricated post-hoc rationalization. The record is clear that in 2016, after the Bank's monitoring system flagged Gueye's account, the Bank conducted a thorough investigation into her transactions and unsuccessfully attempted to contact Gueye before determining that it would no longer continue to service her. Gueye submits no evidence upon which a fair-minded jury could infer that these reasons were somehow manufactured in 2017 in response to the litigation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 95 (2d Cir. 2010) ("[I]n the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment[] and show more than some metaphysical doubt as to the material facts." (internal quotation marks and citation omitted)).

## II.     NYCHRL Claims

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citations omitted). "[T]he plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Id.* at 110 n.8. "[S]ummary judgment is appropriate if 'the record establishes as a matter of law' that discrimination *or* retaliation 'play[ed] no role' in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (second alteration in original) (quoting *Mihalik*, 715 F.3d at 110 n.8). The NYCHRL is "not a general civility code," and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive" and "that she has been treated less well at least in part *because of* [a protected characteristic.]" *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted).

As with Gueye's section 1981 and NYSHRL claims, the district court correctly concluded

that Gueye failed to raise an issue of material fact as to her NYCHRL claim. Even under the more liberal standards of the NYCHRL, Gueye proffered no evidence showing that she received differential treatment based on an improper motive. Viewed in the light most favorable to Gueye, the record provides no basis for a jury to determine that the Bank's decisions to close Gueye's bank accounts and to discontinue its banking relationship with her were in any way tainted by discriminatory animus.

* * *

We have considered all of Gueye's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court